WILLIAM H. ARNOUX, Respondent, v. AMY C. PHYFE and Others, Appellants, Impleaded with Others.

*Mortgage foreclosure — evidence as to fraud and want of consideration.*

In an action brought to foreclose a mortgage the answer set up a want of consideration while the plaintiff claimed that the consideration was the satisfaction of a judgment.

*Held,* that it was competent for the defendants to prove upon the trial that such judgment had been fully paid prior to the giving of such mortgage.

In an action brought to foreclose a mortgage the testimony of the defendants, that nothing was said to them or in their hearing about a mortgage at the time of the execution thereof, and that they knew nothing of it, if true, is sufficient to sustain a defense alleged in their answer that the mortgage was obtained through fraud.

APPEAL by the defendants, Amy C. Phyfe and others, from a judgment of foreclosure and sale of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 1st day of February, 1895, upon the decision of the court rendered after a trial at the New York Special Term.

*Henry B. Johnson* and *Joseph N. Tuttle,* for the appellants.

*C. N. Bovee, Jr.,* for the respondent.

PARKER, J. :

It seems to us that the appellants are clearly right in their assertion that the court excluded evidence which they were entitled to have considered in passing upon the issue presented by the pleadings.

The issues raised by the answer were, that the mortgage was never executed; was without consideration, and obtained through the fraud of the plaintiff. It was proved that the mortgage was executed by the mortgagor, but whether there was a consideration for the mortgage and whether it was procured through fraud, there was conflicting evidence.

The learned trial judge, having had before him all of the parties and the witnesses, reached the conclusion that the consideration was ample, and that there was no fraud, the bond and mortgage instead having been executed with full knowledge on the part of the person executing it and all others interested.

If all of the material and relevant testimony offered by the defendants had been received, we would then be called upon to say whether the determinations of fact have such support in the evidence as entitle them to stand. As we think it very clear, however, that all of the evidence was not received which should have been by the court bearing upon such questions, a discussion of them is neither called for nor proper.

The bearing of the evidence excluded will be readily appreciated from a brief statement of the principal facts affecting the issues.

William Campbell died in April, 1888, leaving a will by which he devised the property covered by this mortgage to his executors in trust, the income and profits during the life of testator's wife to be used by the executors in maintaining and carrying on his household and supporting his family as it then existed. The executors were further empowered to sell and dispose of any of the testator's real estate upon such terms as they should deem best.

The executors desired to raise $14,000 upon the property covered by this mortgage, to be used for purposes connected with the estate, and they were advised that they had not the power under the will to mortgage the property for any such purpose, but did have full authority to sell it. So a relative, this defendant Amy C. Phyfe, consented to appear in the role of a purchaser from the executors,

and to thereafter execute a bond and mortgage for the amount of the loan, which plaintiff had agreed to procure for them from one of his clients, and then to reconvey the property to the executors.

A search was made under the direction of the person in charge of the real estate department in plaintiff's office, who, as well, prepared the deed and bond and mortgage, and all other papers executed or prepared for the purpose of passing title, giving bonds and mortgages and revesting the executors with title.

There were two bonds and mortgages, however, executed by the grantee at about the same moment of time, one to Miss Morss for $14,000 for a loan of like amount made, and the other to this plaintiff for $15,153.

The alleged consideration for the latter mortgage was the payment by the plaintiff to the Chemical National Bank of a judgment, in form against William Campbell, for a sum which, with interest added, equaled the face of the mortgage. The plaintiff and Mr. Foster, who prepared the papers, testified that the execution of this mortgage was talked about and understood as fully by all the parties present as was the execution of the mortgage to Miss Morss. On the other hand, Amy C. Phyfe, this mortgagor, testified that she never heard of any such mortgage; that the papers were laid down before her for signature by Mr. Foster, and she signed them without inquiry, and she was corroborated by her father, John D. Phyfe, Joseph Campbell and Martha Campbell, who were also present, the two last named being executors of the will of William Campbell. ·

As affecting the question of consideration, it was proved that the plaintiff had taken an assignment from the Chemical National Bank of the so-called judgment against William Campbell. The judgment is thus referred to because it was not in fact entered until after Campbell's death, when it was entered as if he were living. The defendants, through questions put to various witnesses, offered to prove that the note indorsed by William Campbell, and guaranteed by this plaintiff, was made by Phyfe & Campbell to enable them to obtain money to be used in completing the Plaza Hotel, in which William Campbell had no interest whatever, his relation to the makers being that of an accommodation indorser. This was followed by an attempt to show that this plaintiff was a partner in the venture of Phyfe & Campbell, and to that end a writing signed by

them and the plaintiff was offered in evidence and excluded. By questions asked of the plaintiff while under cross-examination it was attempted to show that he had an interest in the venture which absorbed the moneys obtained from the note which Campbell indorsed for the accommodation of the firm. This in turn was followed by an attempt to prove that a settlement was had with the plaintiff after the judgment was entered, and before the making of this mortgage, by which there was conveyed to him certain property on Ninety-eighth street in satisfaction of his claim under this judg-. ment and other claims. This will more clearly appear from the following questions which were asked of John D. Phyfe, all of which were objected to and excluded by the court, the defendants excepting: " Q. You have heard the statement with regard to some money obtained — a loan obtained from the Chemical National Bank — have you? A. I have heard part of it. Q. Who obtained that money? * * * Q. Did you make any arrangement with Mr. Arnoux with regard to the procuring of that money before it was procured? * * * Q. Were you also the party who was building the property in 98th street subsequent to this occasion? * * * Q. Did you make any arrangement with Judge Arnoux for the payment of the judgment after it was transferred to him by the Chemical Bank? * * * Q. What did you agree to pay him in satisfaction of that judgment? * * * Q. Did you agree to give him two of the houses in 98th street in payment of his claim, including his claim against the estate of William Campbell? * * * Q. State whether, after that agreement was made and in pursuance of that, you procured the transfer of the title to that property in 98th street to Judge Arnoux in satisfaction of that agreement?"

We take from the record certain questions tending in the same direction which were asked of Jane Phyfe, and excluded by the court, under plaintiff's objection, and to which defendants took exceptions : " I reside at No. 249 Lexington avenue, Brooklyn. I am a daughter of William Campbell, deceased, formerly of 62 South Fifth avenue, and sister of these executors. Q. Did you ever have the title to the 98th street property that has been testified to; did you ever make a deed of that property? * * * Q. Did you ever have a conversation with the plaintiff, William H. Arnoux, as to making a deed of 98th street property? * * * Q. Was any-

thing said by Judge Arnoux to you in regard to taking the property in 98th street in payment of a judgment of the Chemical Bank, which had been assigned to him, or any portion of it? * * * Q. What was that statement? * * * Q. Did you in pursuance of that conversation convey that property to Judge Arnoux? * * * Q. Was that conveyance made prior to the 10th of June, 1892?"

It may well be that the witnesses would not have testified as the questions indicate, but as they were not permitted to answer, because of plaintiff's objection, we can only consider whether the defendants were entitled to make proof of the character called for by the inquiries.

That they were entitled to is clear. The answer put in issue the consideration for the mortgage, and if the fact was that. prior to the date when the mortgage was executed the plaintiff had received the Ninety-eighth street property in full payment of the judgment, and also claims against William Campbell, then there was no consideration whatever for this mortgage.

The defendants were also entitled to have this evidence considered by the court upon the question of fraud. The plaintiff, on his cross-examination, was asked what became of the proceeds of this note; whether he was interested in the partnership which constructed the Plaza Hotel, and further: "Q. Did you receive any collateral or securities for your guarantee of those notes or either of them? * * * Q. Did you receive a conveyance of property in Pennsylvania at the time of your guarantee and as a consideration for it?"

If the testimony of the Phyfes and Campbells was true, that nothing was said to them or in their hearing about this mortgage at the time of its execution, and that they knew nothing of it, then the defense pleaded would have been established. But the court found that it was not true, that they knew all about it and that the bond and mortgage were executed with a full understanding of the situation.

Whatever there was of corroborative evidence upon that issue, therefore, the defendants were entitled to. Would it not have corroborated them to some extent to have proved that the plaintiff had been paid in full? Do parties interested as executors and beneficiaries usually give mortgages upon the property with the manage-

ment of which they are charged, or in which they are beneficially interested, without getting anything in return ? Is that the usual and ordinary course of human action ? If not, then the silence of these parties when executing a mortgage constituting a gratuity equal almost to the value of the property over and above the first mortgage, tended strongly to corroborate their testimony that they had no intention of doing it, and did not know that it was being done.

It may be that the fact was not as defendants attempted to prove, but we must assume otherwise, and, so assuming, the conclusion reached seems to be required.

The judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment reversed, new trial ordered, costs to appellants to abide event.